UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11292-RWZ

JENNIFER WHITEHEAD

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security Administration

MEMORANDUM OF DECISION

November 26, 2012

ZOBEL, D.J.

Plaintiff Jennifer Whitehead files this appeal under 42 U.S.C. § 405(g) seeking to reverse the decision of defendant, Commissioner of Social Security Michael Astrue ("the Commissioner"), finding that she is not disabled and rejecting her application for Disability Insurance Benefits ("DIB") under the Social Security Act, or, alternatively, to remand the case to defendant for further findings.

Plaintiff makes two claims of error. First, she alleges that the Administrative Law Judge ("ALJ") based her assessment of the functional limitations posed by plaintiff's panic attacks on a misstatement of the facts and unreliable medical expert testimony. Second, she claims that the ALJ improperly weighed the medical opinions of her treating physicians. Both parties have moved for judgment in their favor.

**I. Background**

    **A. Applicable Statutes and Regulations**

Under the Social Security Act, a claimant seeking DIB must prove that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a person must have a severe impairment that renders her unable to do her past relevant work or any other substantial gainful work that exists in the economy. 20 C.F.R. § 416.905(a)

The ALJ employs a five-step sequential evaluation process to assess a claim for DIB. See 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 404.1509. The evaluation may be concluded at any step in the process if it is determined that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). In order, the ALJ must determine: (1) whether the claimant is engaging in substantial gainful work activity; if not, (2) whether the claimant has a severe medical impairment that meets the duration requirement; if so, (3) whether the impairment meets or equals an entry in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, and meets the duration requirement; if not, (4) whether the claimant's residual functional capacity ("RFC") is sufficient to allow her to perform her past relevant work; and, if not, (5) whether in light of the claimant's RFC, age, education, and work experience, she can make an adjustment to other work. Id. § 404.1520(a)(4)(I)-(v)

A claimant's "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [she] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). RFC is "the most [a claimant] can still do despite [her]

limitations." Id. A claimant can adjust to other work if she can do any jobs that "exist in significant numbers in the national economy (either in the region where [she] live[s] or in several regions in the country)." Id. § 404.1560(c)(1).

The claimant bears the burden of proof on steps one through four, id. § 404.1520; the Social Security Administration or state agency making the disability determination bears the burden of proof on step five, id. § 404.1560(c)(2). See also Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

**B. Procedural History**

Plaintiff filed her application for DIB on November 18, 2008, alleging an onset date of November 5, 2002, which was later amended to December 13, 2005. She sought entitlement to benefits because of symptoms caused by auditory processing disorder, post-traumatic stress disorder ("PTSD"), chronic panic attacks, depression, thyroid disorder, neck pain, memory loss, and a learning disorder. Her application was denied initially on September 1, 2009, and again on reconsideration on November 20, 2009. Plaintiff requested an administrative hearing which was held before an ALJ on December 29, 2010. The ALJ denied her claim on February 15, 2011. The Decision Review Board selected plaintiff's claim for review but did not complete its review within the requisite time period. Accordingly, the ALJ's decision became the Commissioner's final decision.

Plaintiff filed this appeal on July 21, 2011, and moved to reverse the Commissioner's decision denying her DIB or remand for further findings on January 18, 2012. The Commissioner moved to affirm the decision on March 30, 2012.

**C. Personal and Medical History**

Plaintiff was thirty-seven years old at the time she applied for DIB. She has a high school education and last worked in 2002 as a secretary. She also has past work experience as a bench assembler, retail clerk, resident care aide, and screen printer. She lives with her boyfriend and their six-year-old son in Beverly, Massachusetts.

Plaintiff has a long history of multiple physical and mental ailments.[1] The record shows that between her alleged onset date of December 17, 2005, and her "date last insured" of December 31, 2007, plaintiff was diagnosed with PTSD, major depressive disorder, anxiety disorder, and a language-based learning disorder. Her medical providers also note evidence of possible mood disorder, personality disorder, and obsessive-compulsive disorder. During that period, she received frequent treatment, therapy, and counseling from various providers for depression, anxiety, and panic attacks. Plaintiff was also prescribed numerous psychiatric medications, including Atarax, Ativan, Celexa, Clonidine, Cymbalta, Klonopin, Paxil, Prozac, Seroquel, and Trazodone. Nonetheless, she continues to complain of symptoms of depression, PTSD, and anxiety, and receives ongoing treatment and medication. The relevant details regarding her medical history are discussed more fully infra.

**D.  Hearing Before the ALJ**

At the December 29, 2010, administrative hearing, the ALJ heard testimony from plaintiff, a medical expert, and a vocational expert.

---

[1] Because plaintiff does not challenge the ALJ's assessment of her physical impairments, I will focus only on her mental impairments.

### 1. Plaintiff

Plaintiff testified that she suffers from panic attacks that make her feel as though she is "going to die." R. 39. She stated that during an attack, she feels very dizzy and faint and needs to lie down and be by herself. Id. Plaintiff testified that she had suffered panic attacks while at work and that the attacks could be easily triggered by things such as a loud noise, an angry voice, or even certain thoughts. Id. She noted that her most recent panic attack was three weeks prior to the hearing, but the last attack before that may have been another two or three months back. Id. She estimated that she suffered at least a couple of panic attacks a month and agreed to an average of between twelve and twenty-four a year, with more than one attack in some months and no attacks during others. R. 40. Plaintiff also testified that the time it takes for her to recover from a panic attack varies between ten minutes to two or three hours. Id. She confirmed that she was currently taking Paxil, which relieved her anxiety symptoms "a little bit," but did not have any medication she could take to relieve a panic attack. R. 40-41.

### 2. Medical Expert

Dr. Alfred Jonas, a psychiatrist designated by the ALJ as an independent medical expert, testified at the hearing via telephone. Due to a power outage at his location, Dr. Jonas could not access plaintiff's file during his testimony, but he stated that he had previously reviewed the medical records and taken notes. He clarified with plaintiff that her only current psychiatric medication was 20 mg of Paxil and that she had been on that dosage for over a year. R. 55. He then testified that he found

support in the record for diagnoses of depressive syndrome, anxiety-related disorder, and personality disorder. R. 57. Dr. Jonas found that plaintiff had mild impairment in social functioning and "either no impairment or perhaps a mild degree of impairment" in concentration, persistence, and pace. R. 58-59.

    Dr. Jonas testified that his notes did not indicate that plaintiff "spent much time talking about [panic attacks] per se" with her treating providers, and thus he did not find support in the medical evidence for disabling panic attacks. R. 60. He also noted that if plaintiff had complained of panic attacks and her providers had considered this a significant problem, he would have expected those providers to treat her with a higher dose of Paxil than her current relatively low dosage and/or prescribe an anti-anxiety medication to take during attacks. R. 60-61. Dr. Jonas testified that "generally speaking, medications of that type resolve a panic or anxiety attack usually within fifteen minutes, sometimes a little bit longer" and that Klonopin is a medication that can serve this purpose. R. 61. When asked about Klonopin, plaintiff replied that while she had been prescribed that medication in the past, she was not taking it at present and her providers were often reluctant to prescribe it due to her substance abuse history. R. 61-62. Dr. Jonas confirmed that providers are cautious about prescribing potentially abusable medications to a patient with a history of drug abuse, but stated that there are alternative medications available that should have been considered, though he did not "have any insight into why they were not." R. 62. Plaintiff explained that her primary care physician had been prescribing her refills of Paxil since she lost her health insurance in February 2010 and that she was waiting to see a prescribing psychiatrist.

R. 63.

Dr. Jonas opined that plaintiff would be capable of performing work within the ALJ's proposed RFC of low stress work, defined as unskilled work with simple repetitive tasks, rare changes in the work setting, rare judgment or decision-making, no interaction with the general public, and only superficial interactions with co-workers. R. 64-65. He also testified that, assuming plaintiff had panic or anxiety attacks from time to time and she was receiving proper treatment for those attacks, she might need unscheduled breaks of fifteen to thirty minutes per attack. R. 65.

### 3. Vocational Expert

The ALJ posed three RFC hypotheticals to vocational expert Ruth Baruch during the hearing. First, the ALJ offered a hypothetical of a claimant limited to low stress work, defined as unskilled work with simple repetitive tasks, rare changes in the work setting, rare judgment or decision-making, no interaction with the general public, and only superficial interactions with co-workers. R. 69-70. Baruch testified that such an individual would be able to perform plaintiff's past work as a bench assembler. R. 70. For the second hypothetical, the ALJ added the need for one unscheduled break of fifteen to thirty minutes per month due to panic issues. Id. Baruch responded that many bench assembly jobs would allow for one such break provided plaintiff did not work on a production line. R. 70-71. For the final hypothetical, the ALJ added the need for two unscheduled breaks per month. R. 71. Baruch testified that no jobs would be available in that situation. Id.

### E. The ALJ's Decision

Applying the five-step analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period between her alleged onset date and her date last insured. She also found that plaintiff had severe impairments – PTSD, an anxiety disorder, depression, a learning disorder, tendonitis, and myofascial pain – but that these impairments did not meet or equal an entry on the Listing of Impairments.

The ALJ then made the following RFC assessment:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could perform only low stress work, defined as unskilled work with simple tasks, only occasional changes in the work setting, only occasional judgment or decision-making, no interaction with the general public and only occasional, superficial interaction with co-workers. The claimant also needed to take unscheduled breaks of 15-30 minutes on average once a month in addition to regularly scheduled breaks.

R. 11. In reaching her RFC finding, the ALJ found that plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with" the RFC assessment. R. 12.

Specifically relevant to this appeal, the ALJ found that the medical evidence of record and the amount of medication prescribed did not support the alleged frequency and severity of plaintiff's panic attacks nor a finding that plaintiff would need more than an average of one unscheduled break per month for panic attacks. R. 13. Relying on Dr. Jonas's testimony, the ALJ noted that if plaintiff's panic attacks were as severe as she alleged, her treating psychiatrist would have prescribed a higher dosage of Paxil than the amount plaintiff was taking at that time. Id. Regarding other medication for panic attacks, the ALJ wrote:

> The record indicates that the claimant was prescribed Clonidine for her panic attacks, but she did not want to take it. Dr. Jonas, an impartial medical expert in psychiatry, testified at the hearing that this medication would help with claimant's panic attacks. The claimant testified that she was unable to get a prescription for Clonidine due to her past substance abuse; however, it appears from the medical evidence that she in fact chosen [sic] not to take it.

Id. (citations omitted). Finally and "more importantly," the ALJ found that during the relevant time period before the date last insured, plaintiff had stopped taking her anti-anxiety medications due to her pregnancy and did not immediately resume the medications afterwards. Id. The ALJ wrote that plaintiff "reported in February 2006 that she was feeling good despite a long history of depression and anxiety, but decided to seek treatment 'pre-emptively' in order to have services in place for after [sic] the birth of her child." Id.

With respect to the medical opinions on record, the ALJ declined to accord great weight to an October 20, 2010, opinion submitted by Teresa Barous, a nurse practitioner, and co-signed by Dr. Hugh Taylor, plaintiff's primary care physician. R. 15. Although both Dr. Taylor and Nurse Barous had treated plaintiff on multiple occasions for several years, the ALJ found that the opinion at issue, which stated that plaintiff was disabled by chronic generalized anxiety, PTSD, and depression, "was offered after the date last insured and is contradictory to the claimant's treating psychiatric records which established that when the claimant was taking medication, her psychiatric symptoms were stable." Id. The ALJ likewise accorded little weight to a psychiatric evaluation conducted on September 2, 2009 "because it is reflective of a time during which the claimant was not taking any psychiatric medications and was

9

after the date last insured." Id.  In contrast, the ALJ chose to accord significant weight to the testimony of Dr. Jonas because he is a psychiatrist, he thoroughly reviewed the medical and psychiatric evidence of record, and he listened to plaintiff's hearing testimony.  Id.  She also accorded substantial weight to evaluations from two non-examining state agency medical consultants, finding that they thoroughly reviewed the evidence and their assessments were consistent with the treating medical and psychiatric records.  Id.

Based on her assessment of plaintiff's RFC, the ALJ concluded that plaintiff was capable of performing her past work as a bench assembler through the date last insured.  R. 16.  She therefore found that plaintiff was not disabled at any time between December 13, 2005 and December 31, 2007.  Id.

## II. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence and based on the correct legal standard.  42 U.S.C. § 405(g); Seavey, 276 F.3d at 9.  Substantial evidence is "more than a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The court must uphold the Commissioner's determination "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).  However, a denial of benefits will not be upheld if "the [Commissioner] has committed a legal or factual error in evaluating a particular claim."  See Manso-Pizarro v. Sec'y of Health & Human

Servs., 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

In determining the requisite quantity and quality of the evidence, the court will examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision. Rohrberg v. Apfel, 26 F. Supp. 2d 303, 306 (D. Mass. 1998).

## III.  Discussion

Plaintiff's claims will be addressed in reverse order.

### A. Treating Physicians' Medical Opinions

Plaintiff asserts that the ALJ failed to follow regulations and policy on evaluating medical opinion evidence. To wit, she alleges that the ALJ did not accord proper weight to two medical opinions from treating physicians: 1) an October 20, 2010, statement co-signed by Dr. Hugh Taylor, plaintiff's primary care physician, asserting that plaintiff's "disability is due to chronic generalized anxiety, PTSD, and depression," R. 632; and 2) a September 2, 2009, psychiatric evaluation from an unidentified mental health clinician diagnosing plaintiff with PTSD, major depressive disorder, reported panic disorder with agoraphobia, and attention deficit disorder, and noting that plaintiff "presents as very anxious, depressed, tearful," and "reports she has panic attacks and [is] afraid to go out of [the] house at times," R. 635.

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §

11

404.1527(c)(2). The ALJ did accord significant weight to plaintiff's contemporaneous treating psychiatric records, but declined to do so for the October 2010 and September 2009 opinions, finding that the former was inconsistent with psychiatric records showing plaintiff's symptoms were stable on medication, the latter was reflective of a time during which plaintiff was not on psychiatric medications, and both were provided after the relevant time period.

Setting aside the question of inconsistency with the record, the timing of both opinions is material. The Commissioner correctly points out that the opinions at issue are worded in the present tense without any retrospective component and thus purport to assess plaintiff's functioning at the time they were rendered. See Pierce v. Astrue, No. 10-cv-242-JAW, 2011 WL 2678919 at *5 (D. Me. Jul. 7, 2011) (medical opinion phrased in present tense reflected claimant's then-current condition, not his condition prior to loss of insured status). Even accepting the content of both opinions as true, they are not indicative of the plaintiff's impairments as of her date last insured, almost two years earlier. See Staples v. Astrue, No. 09-10035, 2010 WL 325942, at *7 (D. Mass. Jan. 22, 2010) (ALJ had "good reason to discount" medical opinions that were based on claimant's condition two years after the date last insured); Deblois v. Secretary of Health and Human Services, 686 F.2d 76, 80 (1st Cir. 1982) (medical report dated years after date last insured evaluated only the claimant's "current mental status" and was not evidence that the condition existed during the relevant period). The ALJ provided a sufficient explanation for according little weight to the October 2010 and September 2009 medical opinions, which do not address plaintiff's condition

before the date last insured. Thus, her decision in this regard was based on substantial evidence.

### B. Functional Limitations Imposed by Plaintiff's Panic Attacks

Plaintiff contends that the ALJ based her assessment of plaintiff's RFC, specifically her need for unscheduled breaks due to panic attacks, on a misstatement of the facts and unreliable expert testimony. Plaintiff's arguments that Dr. Jonas' testimony was unreliable, based primarily on the fact that he did not have access to the medical files during his testimony and relied instead on his review notes, are not persuasive. Nonetheless, the ALJ's key findings on the issue of panic attacks are not supported by substantial evidence.

First, the ALJ confused two different psychiatric medications in her discussion of the frequency and severity of plaintiff's panic attacks. The ALJ wrote that Dr. Jonas testified that "Clonidine" would relieve plaintiff's attacks and that plaintiff claimed she had difficulty obtaining a prescription for "Clonidine," yet plaintiff had in fact been prescribed Clonidine and chosen not to take it. But Dr. Jonas and plaintiff did not testify at the hearing about Clonidine, but about *Klonopin*, a different anti-anxiety medication. The record reflects that Klonopin was prescribed only once to plaintiff for a limited time during the relevant period, and there is no indication that she ever declined to take it. Under the ALJ's misreading, however, it would have appeared that plaintiff was both untruthful in testifying about her access to Klonopin and remiss in declining to take the very medication that Dr. Jonas said should relieve her panic attacks. While the Commissioner insists that the mixup in medications was not significant, its impact

13

on the ALJ's view of plaintiff's credibility and the availability of effective treatment appears to have affected the outcome of the case.

The ALJ also found, citing Dr. Jonas's testimony, that plaintiff's medications were inconsistent with symptoms of severe and frequent panic attacks. However, Dr. Jonas' assessment of plaintiff's "low dosage" of Paxil and lack of anti-anxiety prescriptions was based only on the medication that plaintiff was being prescribed at the time of the hearing.[2] Dr. Jonas did not testify or offer any opinion about plaintiff's medication regimen during the period between plaintiff's alleged onset date and the date last insured (December 13, 2005 - December 31, 2007). In fact, the record shows that during those two years, plaintiff was prescribed not only higher dosages of Paxil, but a bevy of other medications to treat anxiety – including Atarax, Ativan, Clonidine, Cymbalta, Klonopin, Prozac, Seroquel, and Trazodone – to varying degrees of effectiveness.

Finally, the ALJ indicated that an important factor in her RFC assessment was the fact that "prior to the date last insured, the claimant had stopped taking her anti-anxiety medications due to her pregnancy, and did not immediately resume the medications." R. 13. As support, the ALJ wrote that plaintiff reported in February 2006 that she was "feeling good" but was seeking treatment "pre-emptively." R. 13. But the ALJ's conclusion misreads and overlooks evidence in the record. Plaintiff presented to

---

[2] According to the record, plaintiff had been prescribed other medications (in addition to 20 mg of Paxil) in the year leading up to her hearing. R. 581, 584, 604. But plaintiff was forced to taper and ultimately discontinue most of her psychiatric medications due to problems with her health insurance. R. 617-619, 658. Her primary care physician continued to prescribe refills of Paxil to plaintiff until she was able to regain her insurance coverage and get an appointment with a psychopharmacological prescriber. R. 63-64, 658.

the North Shore Medical Center for the referenced "pre-emptive[ ]" treatment not in February 2006, but in December 2005, while she was still pregnant and thus not on any medications. R. 235.³ On January 26, 2006, only 18 days after the birth of her son, plaintiff reported back to North Shore Medical Center with "severe anxiety" and "anxiety attacks" and was prescribed Prozac. R. 227-228. And, as already described above, plaintiff continued to seek treatment for anxiety and was prescribed various other psychiatric medications throughout the relevant time period.

The Commissioner argues that the ALJ here "was not considering whether [p]laintiff was prescribed <u>any</u> psychiatric medications after delivering her baby, but rather whether she sought out the specific medications she had previously been prescribed." Docket # 17 at 15. He acknowledges that plaintiff was prescribed various anti-anxiety medications following her pregnancy, but notes that "the three medications which she had taken before her pregnancy [Abilify, Paxil, and Klonopin] were not, and her treating sources during that time period did not indicate that she requested them." <u>Id.</u> at 16. While that may be so, it is unclear why that matters. The fact that plaintiff was prescribed different medications to treat her anxiety does not automatically lead to the conclusion that her symptoms must not have been severe. There is no evidence that plaintiff failed to "seek out" her past medications or that she had direct control over what she was prescribed. Indeed, plaintiff even informed providers that her past

---

³ The clinician and psychiatrist signatures on the North Shore Medical Center's Intake/Bio-Psychosocial Assessment are dated February 10, 2006, but the date of examination is listed as December 14, 2005 and it is clear from the notes ("pregnant Caucasian female" and "wants to have services in place for after birth of child (due quite soon)") that the visit occurred before plaintiff gave birth. R. 235

15

combination of medications had "controlled her symptoms well," R. 528, or "was good occasionally," R. 237, but at least one of her treating psychiatrists declined to put her back on those medications, R. 528, and the record does not explain why plaintiff's other providers chose to prescribe different medication combinations instead.  It is unreasonable to fault plaintiff for the prescription decisions of her providers or to conclude, without further evidence, that any change in medications must signal a reduction in her symptoms.

The ALJ's findings on the frequency and severity of plaintiff's panic attacks are not supported by substantial evidence in the record and cannot be upheld.  On remand, the ALJ should conduct further inquiry into the functional limitations posed by plaintiff's panic attacks and reassess plaintiff's RFC accordingly.

**IV. Conclusion**

Plaintiff's Motion (Docket # 13) is ALLOWED, and the case is REMANDED for further findings and/or proceedings regarding the functional limitations imposed by plaintiff's panic attacks.  Defendant's Motion to Affirm the Commissioner's Decision (Docket # 16) is DENIED.


|   November 26, 2012   |        /s/Rya W. Zobel         |
|  DATE  |  RYA W. ZOBEL  |
|  |  UNITED STATES DISTRICT JUDGE  |